UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ERIN E. HORAN,

                                                                                     <u>DECISION AND ORDER</u>

                                 Plaintiff,

                                                                                      17-CV-6594L

                       v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                                 Defendant.
_____


Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

On April 11, 2014, plaintiff, then forty-six years old, filed an application for a period of disability and disability insurance benefits, alleging an inability to work since July 1, 2013. (Administrative Transcript, Dkt. #6 at 11). Her application was initially denied. Plaintiff requested a hearing, which was held on July 13, 2016 before Administrative Law Judge ("ALJ") Robert E. Gale. The ALJ issued a decision on September 23, 2016, concluding that plaintiff was not disabled under the Social Security Act. (Dkt. #6 at 11-21). That decision became the final decision of the Commissioner when the Appeals Council denied review on July 29, 2017. (Dkt. #6 at 1-4). Plaintiff now appeals from that decision.

The plaintiff has moved for judgment on the pleadings (or in the alternative for remand), pursuant to Fed. R. Civ. Proc. 12(c) (Dkt. #9), and the Commissioner has cross moved (Dkt. #12)

for judgment on the pleadings. For the reasons set forth below, the plaintiff's motion is granted, the Commissioner's cross motion is denied, and the matter is remanded for further proceedings.

**DISCUSSION**

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ summarized plaintiff's medical records, particularly her treatment notes reflecting a left chest tumor resection surgery with residual neuropathic pain, which the ALJ concluded together constituted a severe impairment not meeting or equaling a listed impairment.

The ALJ found that plaintiff has the residual functional capacity ("RFC") to perform light work, except that plaintiff is limited to pushing/pulling 10 pounds frequently and 20 pounds occasionally, primarily using the right upper extremity. Plaintiff can no more than occasionally climb ramps or stairs, squat, stoop, crouch, or kneel, and can rarely crawl. She can reach, handle, finger and feel without limitation with her right upper extremity, and can occasionally perform these activities with her left upper extremity. Plaintiff has no visual or communicative limitations, and should avoid concentrated exposure to moving machinery and working with heights. Finally, plaintiff can perform simple tasks and "some limited complex tasks," can maintain a regular schedule, and will be off-task 3-4% of the time during an 8-hour workday. (Dkt. #6 at 16). Based on this finding and the testimony of vocational expert Josiah L. Pearson, the ALJ concluded

that plaintiff's RFC does not allow her to return to her previous work as a deputy sheriff building guard, but that she can perform the alternative unskilled positions of usher, furniture rental consultant, and school bus monitor. (Dkt. #6 at 19-20).

I. **Medical Opinions of Record**

The record reflects that on November 19, 2010, plaintiff underwent surgery to remove a non-malignant mass (a lipoma) in her left chest. In January 2011, MRI testing showed that a new or recurrent lipoma had grown in that area, encapsulating plaintiff's left brachial nerve (which transmits signals between the spinal cord and left shoulder, arm and hand) and nearby vessels so completely that despite plaintiff's complaints of extreme and ongoing neuropathic pain, surgical removal is not an option. (Dkt. #6 at 13, 232-33, 238, 243, 251-52). The medical opinions of record, therefore, focused on pain and functional limitations in plaintiff's left shoulder, arm and hand, and spine.

Initially, the ALJ gave "little" weight to the March 31, 2014 opinion of plaintiff's treating physician, Dr. Charles Wadsworth, which opined that plaintiff can "rarely" reach above shoulder level or toward the floor, can no more than "frequently" reach to the waist or carefully handle objects, requires frequent changes of position, cannot stand or sit for 6-8 hours in a workday, cannot lift or carry more than 10 pounds regularly, and cannot lift, pull, hold objects, bend, squat, kneel or turn. (Dkt. #6 at 18; 843-48).

The ALJ rejected Dr. Wadsworth's opinion on the grounds that it "does not cover the entire period in issue" and is "unsupported by [Dr. Wadsworth's] own treatment notes," since the examination note closest in time to the March 31, 2014 opinion does not record any objective tests of plaintiff's "strength, sensation, reflexes, gait, ranges of motion of the upper extremities . . . grip strength or hand/finger dexterity." (Dkt. #6 at 18). The ALJ further found, without elaboration,

3

that Dr. Wadworth's assessment was "contrary" to that of consultative examiner Dr. Harbinder Toor. *Id.*

Initially, the ALJ's finding that the opinion "does not cover the period in issue" is factually incorrect. Dr. Wadsworth's opinion was written March 31, 2014 – 8 months after the alleged disability onset date and based on a three-year treatment history – and as such was clearly relevant to the period at issue. Moreover, the ALJ erred by failing to make any obvious application of the treating physician rule to Dr. Wadsworth's opinion, despite the fact that Dr. Wadsworth was a treating internist who had examined plaintiff several times per year since September 2011 (Dkt. #6 at 197), with a primary focus on plaintiff's chronic chest, shoulder and arm pain.[1]

Furthermore, to the extent that the ALJ rejected Dr. Wadsworth's opinion as unsupported, particularly with respect to the limitations relevant to plaintiff's left shoulder, arm and hand, that rejection is insufficiently explained. Indeed, the record does contain some supporting objective examination evidence. As the ALJ noted, consulting physician Dr. Toor found that plaintiff has "decreased sensation and some sensitivity of the left, nondominant upper extremity, decreased ranges of motion of the left shoulder . . . and left grip strength of 3/5 with some difficulty performing grasping, writing, holding and tying shoelaces with the left hand." (Dkt. #6 at 14).

Furthermore, to the extent that the ALJ felt that Dr. Wadsworth's opinion was unsupported simply because it did not attach records of objective testing by Dr. Wadsworth himself, then the ALJ was obligated to complete the record by recontacting Dr. Wadsworth. "A treating physician's failure to fully explain the basis of his findings does not necessarily mean that a sufficient explanation does not exist." *D'Amore v. Commissioner*, 2011 U.S. Dist. LEXIS 149820

---

[1] A recent change to the Administration's regulations regarding the consideration of opinion evidence will eliminate application of the "treating physician rule" for claims filed on or after March 27, 2017. For the purposes of this appeal, however, the prior version of the regulation applies.

4

at *16 (E.D.N.Y. 2011). As such, an ALJ fails to fulfill his duty to complete the record where he rejects a treating physician's opinion simply because it is "unaccompanied by" clinical findings and objective testing, without any attempt to determine whether records of such examinations or testing exist. *Id.*

Alternatively, even assuming *arguendo* that the ALJ's rejection of Dr. Wadsworth's opinion was properly supported, the opinion of consultative examiner Dr. Toor, on which the ALJ purported to base his RFC determination, was not accurately incorporated into that determination. Dr. Toor opined that due to plaintiff's history of left-side pain in her chest, shoulder, arm, upper back and neck, the prognosis for which was "guarded," plaintiff has "moderate to severe" limitations in pushing, pulling, lifting and reaching with her left arm and shoulder, as well as "moderate" limitations in using her left hand for fine manipulations, sitting, and twisting of the cervical spine. (Dkt. #6 at 373-76). Although the ALJ stated that he gave "great" weight to Dr. Toor's opinion relative to plaintiff's left arm and shoulder, the ALJ found, inconsistent with that opinion, that plaintiff could occasionally push and pull up to 20 pounds, frequently push and pull 10 pounds, and occasionally reach, with her nondominant left upper extremity. (Dkt. #6 at 16, 55-56).

In general, while an RFC that permits light work is often consistent with up to "moderate" exertional limitations, it is not sufficient to account for greater than moderate limitations. *See e.g.*, *James v. Astrue*, 2010 U.S. Dist. LEXIS 138820 at *19 (N.D.N.Y. 2010) (remand is appropriate where the ALJ purported to credit a consultative examiner's assessment that a claimant had a "moderate-to-severe" lifting limitation, but inconsistently concluded that the claimant could lift 20 pounds occasionally and 10 pounds frequently). *Accord Gurney v. Colvin*, 2016 U.S. Dist.

5

LEXIS 26198 at *8 (W.D.N.Y. 2016) (an RFC for light work sufficiently accounts for up to moderate limitations as to lifting, reaching, pushing and pulling).

The ALJ's RFC finding that plaintiff has the ability to use her left arm and shoulder to lift, push and pull 10 pounds frequently and 20 pounds occasionally, and to reach occasionally, does not sufficiently accommodate the "moderate to severe" lifting, pushing, pulling and reaching limitations for the left arm and shoulder that were described by Dr. Toor. Because Dr. Toor's opinion was the only examining medical source assessment upon which the ALJ relied and to which the ALJ purported to give "great weight" with respect to plaintiff's left upper extremity limitations, the ALJ's unexplained failure to fully incorporate it into his RFC finding necessitates remand.

Moreover, the ALJ's failure to credit Dr. Toor's opinion relative to plaintiff's sitting and rotating (cervical spine) limitations – limitations which were based on Dr. Toor's objective assessments of plaintiff's limited spinal flexion and extension – was not sufficiently supported. The ALJ's explanation – that "this finding has not been consistently replicated on other examinations" and that plaintiff was found during a single examination to be free from involuntary spinal muscle spasms (Dkt. #6 at 756) – does not convincingly support the ALJ's decision to disregard Dr. Toor's opined limitations as to sitting and/or rotation. To the contrary, Dr. Wadsworth described similar limitations, and plaintiff's treatment records make repeated references to scapular and back pain, and to pain associated with, inter alia, sitting. (Dkt. #6 at 19, 354, 359).

Finally, the ALJ erred in failing to consider the side effects of plaintiff's medications on her ability to function. The record contains myriad references to plaintiff's complaints concerning the sedative effects of the pain medications she was prescribed, and document her physicians' and

6

pain specialists' ongoing efforts to find a combination of medications that would offer plaintiff some relief without causing undue sedation or other negative side effects. *See*, *e.g.*, Dkt. #6 at 415 (Dr. Wadsworth notes that plaintiff is avoiding pain medications during the day due to "[s]edative side effects"); 418 (although a particular combination of medications has been "somewhat effective" at controlling plaintiff's pain, "she says she feels groggy and drowsy all day [and] if she needs to drive or do anything dangerous, she doesn't use the medicine, and just has to deal with the pain"); 717 (plaintiff's medication leaves her "feeling hung over" and prior medications were "overly sedating for daytime use"); 756 (plaintiff's neurologist reports that plaintiff is "unable to work on [prescribed] medications because they are too sedating," and has been unable to "tolerate multiple opioids . . . due to nausea, dizziness, and palpitations").

The ALJ dismissed the idea that plaintiff's medications would affect her ability to maintain attention and concentration for more than the 3-4% of the time he arbitrarily assigned in his RFC finding, explaining that "[n]ot even Dr. Wadsworth" mentioned such limitations. (Dkt. #6 at 21).

I find that this reasoning was flawed. Initially, the form completed by Dr. Wadsworth did not ask for an assessment of plaintiff's ability to attend and concentrate on tasks. Nonetheless, Dr. Wadsworth's opinion does refer to the sedative effects of plaintiff's medications, noting that plaintiff should not travel alone due to their side effects, and reporting that plaintiff's "pain and medication side effects made her previous job [as a sheriff's deputy] unsafe." (Dkt. #6 at 846-47). Given the fact that the record indicates that plaintiff's ability to maintain attention and concentration, and/or to travel to work, may be significantly compromised – either with her medications, due to side effects, or without her medications, due to pain – the nature and extent of the limitations posed thereby should be explored on remand.

In sum, because I find that the ALJ failed to complete the record with respect to plaintiff's exertional and postural limitations, did not provide sufficient reasons for rejecting the opinion of plaintiff's treating physician, failed to accurately assess or incorporate the opinion of consultative examiner Dr. Toor into his RFC finding even while purporting to give it "great" weight, and failed to sufficiently obtain or consider the effects of plaintiff's pain medications on her ability to drive, concentrate and/or perform other work-related functions, remand is necessary.

Plaintiff also argues that the ALJ failed to properly assess her credibility. Because I find that remand is otherwise warranted, I decline to reach that contention. *See generally Siracuse v. Colvin*, 2016 U.S. Dist. LEXIS 34561 at *27 (W.D.N.Y. 2016) (declining to reach remaining challenges to RFC and credibility determinations where remand was otherwise warranted).

## CONCLUSION

For the forgoing reasons, I find that the ALJ's decision was not supported by substantial evidence. The plaintiff's motion for judgment on the pleadings (Dkt. #9) is granted, the Commissioner's cross motion for judgment on the pleadings (Dkt. #12) is denied, and this matter is remanded for further proceedings. On remand, the ALJ should recontact plaintiff's treating physician Dr. Wadsworth to request clarification and/or an updated opinion, reassess Dr. Wadsworth's opinion(s) with a detailed application of the treating physician rule, reassess the consultative medical opinion evidence of record, and if appropriate, order additional consultative testing to provide sufficient objective testing to concretely assess the extent of plaintiff's exertional

and postural limitations, and should consider the impact of the side effects of plaintiff's medications on her ability to drive and/or to perform work-related functions.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
January 30, 2019.